UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**EASTERN DIVISION AT FRANKFORT**

| | |
|---|---|
| DARYL PETERSON, | ) |
| | ) |
| Plaintiff, | ) Action No. 3:15-CV-00035-JMH |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security | ) |
| | ) |
| Defendant. | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 11, 12) on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits.[1] The matter having been fully briefed by the parties is now ripe for this Court's review.

**I.**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520(1982)).

## II.

In February 2012, Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI), alleging disability beginning in April 2011, due to a back impairment (Tr. 190-98, 224). He was fifty one years old at the time of alleged onset. He claims that he suffers from "crippling back pain as the result of degenerative disc disease and spinal stenosis" and bases his claim of disability on diagnoses of degenerative disc disease, spinal stenosis, and foraminal

narrowing of the lumbar and thoracic spine (DE 11-1, Pl. Br. At 1). His prior work consisted of manual labor and medium/semi-skilled/skilled labor with some heavy lifting (Tr. 32-36, 65-66, 210-18), which he is no longer able to do (Tr. 17, 65).

Administrative Law Judge (ALJ) Greg Holsclaw denied Plaintiff's claims in December 2013 (Tr. 8-19), concluding that Plaintiff could perform light work (Tr. 14). The Appeals Council declined Plaintiff's request for review (Tr. 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981, 416.1481, 422.210(a). This appeal followed.

### III.

In 2003, Plaintiff injured his back while lifting a car hood while at his job at an auto plant (Tr. 273, 321), at which time he reported back and left leg pain. Doctors diagnosed a herniated disc in his lower back (Tr. 273-74, 277-78). Plaintiff received a worker's compensation settlement in February 2007 (Tr. 318-19, 493-95). He had a lumbar spinal cord stimulator implanted in early 2008 (Tr. 377-80) and subsequently worked as a dock worker at a marina and as a replacement operator at General Electric (GE), jobs that required him to lift between 40 and 60 pounds (Tr. 34-36, 215, 262).

Plaintiff alleges that he became disabled in April 2011 (Tr. 190). On that date, Thad Jackson, M.D., surgically replaced his

spinal cord stimulator (Tr. 382-83). In July 2011, Dr. Jackson also documented good leg strength, normal muscle tone, and a normal gait. Dr. Jackson instructed Plaintiff to slowly increase his activity level, with no lifting over 30 pounds or excessive bending/twisting at the waist (Tr. 408-09). In September 2011, Dr. Jackson released Plaintiff to return to work at GE with the same restrictions, adding "[i]t is OK to use hand held power tools" (Tr. 411-12).

In October 2011, Plaintiff reported back and shoulder pain after "[p]run[ing] a couple of trees overhead." Dr. Jackson documented normal strength and sensation, prescribed medication used to treat inflammation and noted Plaintiff might need to look for other jobs at GE (Tr. 413-14). In January 2011, Plaintiff said he was bidding for other jobs. Dr. Jackson opined that, at that time, he could lift up to 30 pounds (Tr. 397-98). In February 2012, Plaintiff reported that he was unable to do his current assigned job at GE. An examination showed normal strength, sensation, and gait. Dr. Jackson commented that Plaintiff had been unable to tolerate "minimal activity and a fairly low stress job," and said, "I don't know if there is a more sedentary job which he could tolerate." Dr. Jackson specified that Plaintiff should not lift more than 20 pounds or bend or twist at the waist, and assigned a permanent impairment rating of 13% (Tr. 395-96, 399). GE noted

4

these restrictions and found "no job available" at their site (Tr. 419).

In April 2012, Plaintiff presented to Takasha Stewart-Hubbard, M.D., for a physical examination in relation to his DIB and SSI claims (Tr. 420-25). Plaintiff complained of back pain with reaching, lifting, bending, standing, or sitting "for any amount of time." However, he admitted that pain medication helped. On examination, Plaintiff had limited range of motion in his back and bilateral positive straight leg raising, but full 5/5 muscle strength, normal muscle tone, normal fine and gross manipulation, and a normal gait. Dr. Stewart-Hubbard opined that he had limitations in standing for long periods, moving about, and lifting and carrying, but no limitations in traveling, gripping, or fine or gross manipulation. State agency physician Jack Reed, M.D., subsequently reviewed the record and opined Plaintiff had abilities consistent with light work (Tr. 100-104). *See* 20 C.F.R. § 404.1567(b) (defining light work).

In August 2012, Plaintiff began treatment with Darel Barnett, M.D., of Baptist Center for Pain Control (Tr. 436-40). During his initial appointment, Plaintiff complained of pain in his back and left leg but admitted that medication helped. On examination, straight leg raising was positive on the left but negative on the right. Plaintiff had some decreased sensation in his upper back, but intact sensation in his lower back, full 5/5 strength in his

legs, and a normal gait. Dr. Barnett assessed chronic pain syndrome and myofascial pain syndrome and prescribed pain medication.

In September 2012, Plaintiff returned to Dr. Barnett and reported that his simulator was "effectively treating his low back pain to a degree, but especially his left leg pain," and that medication helped him manage the residual back pain (Tr. Tr. 426-35). Plaintiff had recently driven to Florida to visit family. He did some swimming while in Florida, and mowed his lawn after returning home to Kentucky. On examination, straight leg raising was positive on the left, and he had some decreased sensation in his upper back and left leg but full 5/5 muscle strength. Dr. Barnett reviewed a recent CT scan of Plaintiff's back in comparison to MRIs from 2008, finding no evidence of progression of his lumbar disease. He noted that medication "does help to decrease his pain by about 40-50% when he takes it and is allowing him to be active, work, travel, and go about his daily activities" (Tr. 426-30, including reading of radiological film indicating moderate right foraminal narrowing at L3-4 and 4-5, disc osteophyte complex intending mildly on ventral subarachnoid at L2-3, and moderate to severe bilateral foraminal narrowing with disk osteophyte change and degenerative changes along with vacuum disc phenomena at L5-S1, as well as 3mm of degenerative retrolisthesis of L5 on S1).

Plaintiff has a history of using prescription medication to control his pain, taking it as frequently as 3-4 times daily. He

has used Gabapentin, Norco, Oxycodone, and Percocet (Tr. 71, 234, 247) in an effort to control his pain.

Plaintiff continued to receive treatment from Dr. Barnett through July 2013 (Tr. 441-56, 487-89). While examinations showed positive straight leg raising on the left, they also consistently documented full 5/5 muscle strength, with no muscle weakness or atrophy noted (Tr. 442, 445, 448, 451-52, 455-56, 488). In October 2012, Plaintiff said that, with treatment, he was able to "go about some daily activities" and "be somewhat active in his hobby, which is woodworking" (Tr. 447). In December 2012, Plaintiff reported that he strained his back a few weeks earlier, "when he was scrubbing his tub," but also related that he was "having more good days than bad days" (Tr. 444-46). In January 2013, Plaintiff admitted continued benefit from his stimulator and medication, stating that he was "able to walk and go about daily activities and he is doing pretty well overall" (Tr. 441). In March 2013, he also began seeing a chiropractor (Tr. 458-70, 473-86). In May 2013, Dr. Barnett noted that Plaintiff's medication was "helping him greatly with functional status and allowing him to go about some light chores around his home, daily activities, and hobby" (Tr. 454). In June 2013, Plaintiff said he had driven to and from Cincinnati the day before (Tr. 473). In July 2013, he referenced digging a hole in his yard (Tr. 469) and vacationing in Florida

(Tr. 487). And, in August 2013, he reported that he washed his truck (Tr. 460) and drove to Memphis and back (Tr. 464).

Plaintiff was represented by counsel at the September 2013 administrative hearing (Tr. 25). Plaintiff testified that he was primarily limited by upper back pain, "right in between my shoulder blades," which radiated into his right hand (Tr. 42-43). He described constant pain in his lower back, "a dull pressure most of the time," and a stabbing pain in his left buttock with any bending or twisting, "like somebody has kicked me with a pair of steel-toed boots" or "like it's a deep bruise" (Tr. 44-45). He estimated that his pain never goes below a 6 on a 10 point scale and that, eight to ten times a month, he experiences pain at 9 on the same scale (Tr. 43). He testified, as well, that he experiences pain which radiates down his left buttock to his left leg, which "constantly burns down the back of my leg, sharp pains" (Tr. 44-45). He claimed that, although he was right handed, he now did everything with his left hand due to pain (Tr. 42-43, 48-49). He also testified that he is unable to travel long distances (Tr. 53-54) and that he no longer enjoys hobbies that he formerly enjoyed, including fishing and yard work (Tr. 49). He testified that he has difficulty with shopping, household chores, and dinner preparation (Tr. 51-53). He admitted to doing some "[v]ery light housework," such as dusting or wiping down a countertop (Tr. 52). On further questioning, he also stated that he had scrubbed a tub,

8

although he asserted that was a day he felt good (Tr. 52-53, 58-59). He could not explain treatment records indicating that he dug a hole in his yard (Tr. 61; *see* Tr. 469). Plaintiff testified that he regularly mowed his lawn using a walk-behind mower (Tr. 57-58).

Plaintiff specified during his testimony that, since 2003, he had only been able to drive "short distances" (Tr. 46). However, upon further questioning, he testified that, in June 2013, he drove an hour and 20 minutes to visit relatives near Cincinnati, returning that same day (Tr. 53-54). In addition, Plaintiff stated that, in August 2013, he and a friend drove five hours to Memphis to research barbeque preparation, returning the same day (Tr. 53-55). Plaintiff also testified that he drove to Florida for a vacation in July 2013 (Tr. 55-56). Although he initially claimed that he had not been swimming since he was a kid, on further questioning, Plaintiff testified that he had gone swimming during a Florida vacation in September 2012 (Tr. 56-57). And, although he asserted that he was no longer able to fish, on further questioning, Plaintiff testified that he and his friends spent more than two hours fishing on Lake Cumberland in the summer of 2012 (Tr. 48-49). In turn, he testified that each of these instances caused him an extraordinary amount of pain.

The ALJ followed the five-step sequential evaluation for assessing disability claims (Tr. 11-19). *See* 20 C.F.R. § 404.1520. The ALJ found that Plaintiff had a severe back impairment but that

his condition did not meet or equal the requirements for any of the per se disabling impairments listed at 20 C.F.R part 404, subpart P, appendix one, including specifically Listing 1.04 (disorders of the spine) (Tr. 13-14). The ALJ then continued with the sequential evaluation, finding Plaintiff had the residual functional capacity to do a reduced range of light work (Tr. 14-17). In this vein, the ALJ found that Plaintiff had a number of limitations in physical functioning (Tr. 14), but that his complaints of disabling limitations were inconsistent with the medical record and with his admitted activities, which included light household chores, woodworking, mowing the lawn, and long-distance driving, despite the pain that it caused him (Tr. 13-17). Finally, the ALJ relied on a vocational expert's testimony to find that, although this residual functional capacity would preclude his past strenuous work, Plaintiff could do other, light work in the national economy (Tr. 18; *see* Tr. 66-69 (vocational expert testimony)). Thus, the ALJ found that, between the alleged onset of disability in April 2011 and the date of the ALJ's December 2013 decision, Plaintiff did not meet the strict requirements for disability under the Act (Tr. 19).

In February 2014, Plaintiff submitted additional medical records to the agency's Appeals Council, one of which pre-dated the ALJ's December 2013 decision, but the remainder of which documented treatment after the ALJ's decision (Tr. 270-72, 497-

503). The Appeals Council found the additional evidence did not provide a basis for changing the ALJ's decision (Tr. 1-4).

**III.**

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept." *Id*. at 353 (quoting *Kirk v Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).

**IV.**

Plaintiff first asserts that the ALJ erred in failing to conclude that his back impairment met Listing 1.04A (disorders of the spine with evidence of nerve root compression) (Pl. Br. 6-8). However, Plaintiff has not met his burden to establish a per se disabling impairment. The listings at 20 C.F.R. pt. 404, subpt. P, app. 1, cover medical conditions so debilitating that they warrant an automatic finding of disability without further consideration of the claimant's residual functional capacity or ability to perform past or other work. *See Sullivan v. Zebley*, 493 U.S. 521,

534 (1990). The claimant bears the burden of proving that his impairment met a listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). To meet this burden, a claimant must show that his impairment met "*all* of the specified medical criteria" for the listing. *Zebley,* 493 U.S. at 530 (emphasis in original).

To meet Listing 1.04, a claimant must establish the diagnostic criteria by showing a disorder of the spine resulting in compromise of a nerve root or the spinal cord. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04. In addition, paragraph A requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight leg raise testing (sitting and supine). 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A.

Here, the ALJ found that Plaintiff did not meet Listing 1.04 (Tr. 14). The ALJ observed that Plaintiff did not show evidence of nerve root compression, as required to meet the listing (Tr. 14). Indeed, while imaging of Plaintiff's back reflects some degenerative changes, it does not document nerve root or spinal compression, as required by the listing (Tr. 428). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A. There is evidence of positive straight leg raising in the record, but Plaintiff has not shown evidence of it in both the seated and supine position, as required

by the listing. *See id*. Further, he has not pointed to evidence in the record to establish the other criteria such as motor loss (atrophy with associated muscle weakness or muscle weakness) that are required by the listing. *See id.* Rather, the exams of record demonstrate normal (5/5) muscle strength, with no weakness or muscle atrophy noted (Tr. 15-16; *see* Tr. 395, 397, 406-07, 413, 422, 438, 442, 445, 448, 451-52, 455-56, 488).

In reaching his conclusion, the ALJ also reasonably gave weight to state agency physician Dr. Reed's opinion, which was consistent with the evidence in the record, that Plaintiff did not meet or medically equal a listing, including specifically Listing 1.04 (Tr. 16, 100-04). *See* 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (unpublished) (ALJ reasonably relied on reviewing source opinions that were supported by evidence in the case record).

Contrary to Plaintiff's argument, the ALJ did not ignore Plaintiff's spinal stenosis or evidence of nerve root compression. Rather, he engaged with the evidence of Plaintiff's conditions and reached a conclusion based on the evidence of record.[2] Plaintiff

---

[2] Both the Court and the Commissioner recognize that some discussion of Plaintiff's condition took place in other portions of the ALJ's decision, separate and apart from the discussion of Listing 1.04A. However, the ALJ's

13

has not borne his burden of proof and cannot demonstrate that the ALJ erred in failing to conclude that his condition met this listing.[3]

**V.**

Plaintiff also objects to the ALJ's residual functional capacity finding (Pl. Br. 8-12), arguing that it fails to reflect his true limitations as supported in the evidence in the record. He argues, first, that the ALJ failed to give proper weight to the opinion of his treating physician, Dr. Jackson (Pl. Br. 8-11), giving greater weight to the opinion of agency consulting physician Dr. Stewart-Hubbard, who examined and assessed Plaintiff with the ability to do light work. Generally, the ALJ should give the opinions of treating physicians controlling weight but may discount the opinion if the ALJ provides good reasons supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). While Dr. Jackson commented in his notes that Plaintiff had been unable to tolerate

---

findings at other steps of the sequential evaluation may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment. *See Noble v. Comm'r of Soc. Sec.*, No. 14-cv-12588, 2015 WL 4934562, at *4 (E.D. Mich. Aug. 18, 2015) (unpublished) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)); *White v. Colvin*, No. 4:12-cv-11600, 2013 WL 5212629, at *7 (E.D. Mich. Sept. 16, 2013) (unpublished) (citing *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-35 (10th Cir. 2005)).

[3] Plaintiff wishes to rely on evidence that was not before the ALJ but which was submitted for the first time to the Appeals Council after the ALJ's decision (Pl. Br. 8 (citing Tr. 500-01)). The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after an ALJ's decision cannot be considered part of the record for purposes of substantial evidence review," *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2002), and this Court declines to consider this evidence further in this matter.

14

"minimal activity and a fairly low stress job" and said, "I don't know if there is a more sedentary job which he could tolerate" (Tr. 396), those statements are insufficient to establish the limitations that Plaintiff asserts. Under agency policy, an ALJ should not assume that a medical source using terms such as "sedentary" is aware of the agency's definition of these terms. *See* Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5. Thus, the ALJ properly observed that this opinion did not limit Plaintiff to "sedentary work" as defined in Social Security regulations (Tr. 17). Further, Dr. Jackson also opined that Plaintiff could lift up to 20 pounds, which corresponds with light work (Tr. 399), *see* 20 C.F.R. § 404.1567 (defining sedentary and light work), and assigned a permanent impairment rating of 13% (Tr. 396), which further supports a finding of non-disability. *See Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971) (impairment ratings of less than 30% supported finding of non-disability).

Further, the ALJ did consider Dr. Jackson's statement regarding "sedentary" work and properly found that it was entitled to little weight because it was inconsistent with Plaintiff's activities, which included light household chores, mowing the lawn, woodworking, and driving long distances (Tr. 17; *see* Tr. 53-58, 441, 447, 454, 464, 473, 487). *See* 20 C.F.R. §§ 404.1527(c)(3)-(4) (ALJ must consider support for opinion and consistency with the record as a whole); *Lester v. Soc. Sec. Admin.*, 596 F. App'x

15

387, 389 (6th Cir. 2015) (unpublished) (ALJ properly discounted treating physician opinion that conflicted with other substantial evidence in the record, including the claimant's activities); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (affirming finding claimant could perform light work, when he could drive a car for short distances and walk four or five blocks per day).

The ALJ did give weight to Dr. Jackson's opinion that Plaintiff could lift up to 20 pounds (Tr. 399, 419) and included this restriction in his residual functional capacity finding (Tr. 14, 17 (citing Tr. 419 as 9F)). The ALJ also gave weight to Dr. Jackson's opinion that Plaintiff should not engage in excessive bending or twisting at the waist (Tr. 399, 419), finding that Plaintiff could only occasionally stoop, kneel, crouch, or crawl (Tr. 14, 17 (citing Tr. 419 as 9F)). Although the ALJ discounted Dr. Jackson's opinion regarding "sedentary" work, the ALJ's decision was consistent with the specific limitations identified by Dr. Jackson (Tr. 399, 419). It was also consistent with the specific limitations identified by agency consulting physician Dr. Stewart-Hubbard, based on her examination of Plaintiff (Tr. 420-25), upon which the ALJ reasonably relied (Tr. 19). *See Casey v.*

16

*Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (ALJ reasonably relied on consulting doctors' report).

Ultimately, the Court disagrees with Plaintiff's argument that the ALJ should have found a residual functional capacity for sedentary, not light, work (Pl. Br. 11-12). Each of the doctors who identified specific functional limitations during the relevant period – including Plaintiff's treating physician, Dr. Jackson - agreed that Plaintiff had abilities consistent with light work (Tr. 101-04, 399, 420-25). The record, as a whole, demonstrates that Plaintiff's symptoms responded to treatment and that Plaintiff engaged in significant activities including light household chores, mowing the lawn, woodworking, and long distance driving (Tr. 17; *see* Tr. 53-58, 441, 447, 454, 464, 473, 487), suggesting that Plaintiff had greater functional ability than claimed. *See* 20 C.F.R. § 404.1529(c)(4) (ALJ must consider inconsistencies, including conflicts between a claimant's statements and the medical record); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). The Court concludes that the ALJ's residual functional capacity finding was supported by substantial evidence of record and affirms the decision of the Commissioner.

Accordingly, for all of the reasons set forth above, **IT IS ORDERED**:

1) that Plaintiff's Motion for Summary Judgment (DE 11) is **DENIED** and

2) that Defendant's Motion for Summary Judgment (DE 12) is **GRANTED**.

This the 29th day of September, 2016.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge